[No. A014980. First Dist., Div. Four. Jan. 28, 1987.]

CITY AND COUNTY OF SAN FRANCISCO et al., Plaintiffs and Respondents, v.
CORRANZO RAGLAND, Defendant and Appellant.

[Opinion certified for partial publication.*]

*Part II of this opinion is not certified for publication. (See Cal. Rules of Court, rules 976(b) and 976.1.)

COUNSEL

Donald E. Hanson for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Gloria F. De Hart, Linda Ludlow, Stan M. Helfman and Mary A. Roth, Deputy Attorneys General, for Plaintiffs and Respondents.

William A. Richmond, District Attorney (Tulare), Gary H. Evans and John S. Higgins, Jr., Deputy District Attorneys, as Amici Curiae on behalf of Plaintiffs and Respondents.

OPINION

ANDERSON, P. J.—Defendant Corranzo Ragland (appellant or Corranzo) appeals from a judgment denying him attorney's fees after he successfully defended a paternity suit.

Corranzo and Dorothy Williams (Dorothy), the mother of Roschelle (the minor child on whose behalf the present action has been brought) were married in 1959 and separated in 1963. They had three children: Corranzo, Jr., Jacqueline and Dorothea. Following their divorce, Corranzo married his present wife, Audrey, in 1966. Between 1970 and 1981 (the time of the trial) Corranzo and Dorothy's children were reared by Corranzo and Audrey. Dorothy also remarried in 1966. Her second husband, Fred Goins, however, died one year later. Roschelle, who was nine years old at the time this action was initiated, had been born out of wedlock on July 23, 1969. Dorothy testified that she had sexual intercourse once with Corranzo in September 1968 on the last day of her period which, according to the hospital records, was on September 16, 1968. However, she conceded that during the possible conception period (45 days before and 90 days after Sept. 16, 1968), she dated several men including a Bruce, Wooten Johnson, and Robert Williams whom she eventually married in 1970.

Robert Williams's blood test conclusively proved that he was not Roschelle's father. Corranzo testified that he had not had any sexual relations with Dorothy since 1963, the time of their separation, and he insisted that it was impossible for Roschelle to be his daughter. Corranzo's testimony was well corroborated. The records show that Dorothy gave the child the last name of Ragland for the sake of convenience because she had three previous children by that name. In fact, Ms. Chow, a child welfare worker with the San Francisco Department of Social Services, testified that after Roschelle's birth Dorothy had told her that she did not know who was the child's father. This was consistent with the hospital medical record in which the designation of the child's father was left blank prior to birth. Lastly, Dr. Ronald Smith, the chief of obstretrics and gynecology at San Francisco General Hospital, testified that based upon Dorothy's version that conception occurred on September 16, 1968, it was highly unlikely for appellant to have been the father of the child. This was so because (1) the time of child delivery is 38 weeks after conception—here, June 20, 1969; (2) Roschelle, weighing 8.4 pounds, was born on July 23, 1969—44 weeks after conception; and (3) infants die in the womb after 42 weeks in the absence of obstetrical interference.

Despite such proof that appellant was not the father of Roschelle, respondent City and County of San Francisco which provided AFDC (aid to families with dependent children) (Welf. & Inst. Code,[1] § 11350 et seq.) for the support of Roschelle, brought an action against Corranzo in order to establish paternity and recoup the AFDC payments made to Dorothy for support of Roschelle. The county is required to seek out the father of a child born

---

[1]Unless otherwise indicated, all statutory references are to the Welfare and Institutions Code.

out of wedlock and to recover AFDC payments from the noncustodial parent. (§§ 11475.1, 11475.2, 11476; *Salas* v. *Cortez* (1979) 24 Cal.3d 22, 30 [154 Cal.Rptr. 529, 593 P.2d 226].)

On November 22, 1978, the county moved for an order requiring that Corranzo, Dorothy and the child submit to HLA tissue-typing blood tests. The motion requested that appellant pay for the blood tests of himself and the child as well as for attorney's fees even though there had been no adjudication whatsoever concerning his fatherhood. On January 2, 1979, the court ordered appellant to pay one-half of the costs of the blood tests.

Next, the county propounded interrogatories and a request for production of financial documents, including appellant's income tax returns. Appellant unsuccessfully objected, claiming that the income tax returns were privileged.

In the course of preparation for trial, appellant discovered that there was documentary evidence in the possession of the county department of social services showing that Dorothy, the mother of the child, had severe mental and emotional problems and hallucinations regarding sexual activities, and that she had received psychiatric treatment therefor. The county resisted appellant's request to produce it and inspection of it was denied by the court.

Similarly, the county resisted disclosure of other information lodged with the department of social services—specifically, the mother's statement to Ms. Chow, a social worker, that she did not know who Roschelle's father was. While this evidence was finally admitted at trial, appellant was forced to employ several legal maneuvers, including the prosecution of an extraordinary writ to the appellate court, in order to overcome the county's attempts to suppress it.

The record also shows that following the commencement of the action, the mother decided not to pursue the matter further and wished to drop her previous allegations that Corranzo was Roschelle's father. However, she suddenly changed her mind when advised by the county that she would lose her rights to further welfare payments if she refused continued participation in the paternity action.

The record further reveals that Mr. Williams, who married Dorothy shortly after the birth of the child, was willing to adopt Roschelle. Appellant then moved the court to stay the proceedings pursuant to section 11479,[2]

---

[2]Section 11479 provides in part that "In all cases in which the paternity of the child has not been established to the satisfaction of the county department, the county department shall refer the applicant to the district attorney at the time the application is signed. Upon the advice of a county department that a child is being considered for adoption, and regardless of whether or not the whereabouts of the parent is known, the district attorney shall delay his investigation and other action with respect to the case until advised that the adoption is no longer under consideration."

so that the adoption could proceed and obviate further proceeding with this costly case. This motion of appellant was also denied.

On June 19, 1980, the county moved to order appellant to pay child support *pending* trial pursuant to sections 11350, 11350.1 and Civil Code sections 196a, 248, 4370 and 4700. Although appellant's paternity had not even been adjudicated, the motion was granted and he was ordered to pay temporary child support, including arrearages accruing from the time of filing of the motion. Appellant challenged the order in both the trial court and appellate court on a variety of grounds, including due process, but to no avail. Although appellant complied with the court order for temporary child support, he could not afford the arrearages. Thereupon, the county garnished his wages and the garnishment order was terminated only after the jury brought in its verdict in favor of appellant. Although appellant was the prevailing party in this paternity suit, the temporary support payments were never refunded to him.

Appellant, who is employed as a janitor for the San Mateo School District, defended the paternity accusation with retained counsel. In the course of the lengthy legal proceedings[3] appellant incurred substantial attorney's fees— amounting to approximately $35,000. Following the favorable verdict, appellant moved for costs and attorney's fees in order to recoup his litigation expenses. After hearing, the trial court, while sympathetic to appellant's claim, nevertheless rejected it: ". . . Frankly, I would like to give attorney's fees in this case because of the manner in which this man, to me he is obviously not the father, has been pushed around by the District Attorney's office. I can't do it against the law."

Corranzo's principal contention on appeal[4] is that the trial court erred in refusing to grant attorney's fees. Appellant argues that the present action for paternity and child support was predicated not only upon the AFDC provisions of the Welfare and Institutions Code (§ 11350 et seq.), but also upon several sections of the Civil Code under which an award of attorney's fees is explicitly authorized (Civ. Code, § 7011; see also §§ 196a, 4370 and 4700).

---

[3]Since the action filed on May 18, 1978, there have been numerous proceedings including five depositions, several sets of interrogatories, one set of requests for admissions, motions for production of documents and blood tests, petitions for two writs to the Court of Appeal, a hearing for temporary child support, preparation for a jury trial which was postponed followed by preparation of a jury trial lasting for two and one-half weeks, a motion for a new trial, a motion for child support pending appeal (filed by the prosecution) and the present appeal.

[4]In this case both parties filed notices of appeal. The county appealed from that portion of the judgment which held Corranzo not to be the father of the child, while Corranzo challenged the denial of attorney's fees. However, the county has since abandoned its appeal, leaving Corranzo the sole appellant herein.

Respondents counter by citing established law precluding reliance on these Civil Code sections for the award of attorney's fees to a defendant where, as here, the action for paternity and recovery of AFDC payments was brought pursuant to section 11350 et seq. of the Welfare and Institutions Code. (*County of Los Angeles* v. *Superior Court (Holley)* (1980) 102 Cal.App.3d 926, 929-930 [162 Cal.Rptr. 636]; see also *County of Tulare* v. *Ybarra* (1983) 143 Cal.App.3d 580 [192 Cal.Rptr. 49]; *Smith* v. *Superior Court* (1981) 118 Cal.App.3d 512 [173 Cal.Rptr. 437]; *County of Fresno* v. *Superior Court (O'Neal)* (1978) 82 Cal.App.3d 191 [146 Cal.Rptr. 880].) We agree with appellant and remand the cause to the trial court for a determination of attorney's fees.

It is, of course, well settled that in a civil suit each party is responsible for its own attorney's fees and that attorney's fees are not recoverable as costs unless expressly authorized by statute or the agreement of the parties. (Code Civ. Proc., § 1021; *Davis* v. *Air Technical Industries, Inc.* (1978) 22 Cal.3d 1, 5 [148 Cal.Rptr. 419, 582 P.2d 1010]; *LeFave* v. *Dimond* (1956) 46 Cal.2d 868, 870 [299 P.2d 858, 60 A.L.R.2d 939].) This general rule is applicable also to paternity suits in which attorney's fees may be awarded only in case of specific legislative (statutory) authorization. (*Smith* v. *Superior Court, supra,* 118 Cal.3d at p. 516.)

We find the requisite statutory authorization for awarding attorney's fees to appellant exists in the Uniform Parentage Act (Civ. Code, § 7000 et seq.; hereafter Uniform Act). Section 7011 of the Uniform Act explicitly provides that in an action brought for establishing parent-child relationship "*The court may order reasonable fees of counsel,* experts, and the child's guardian ad litem, *and other costs of the action* and pretrial proceedings, including blood tests, to be paid by the parties in proportions and at times determined by the court." (Italics added.)

Respondents' assertion notwithstanding, the provisions of the Uniform Act (including the authorization of attorney's fees) must be held applicable to the instant case for several reasons.

First, the complaint, without invoking any specific statutory authority, seeks relief, all of which the Uniform Act authorizes. The county seeks a declaration of paternity, child support, medical and hospital expenses incurred in connection with the birth of the child and parental care, reimbursement of the county for public assistance, enforcement of the child support orders by the district attorney, and reasonable attorney's fees and costs. All these remedies can be sought and obtained under the various sections of the Uniform Act which explicitly provide for establishing paternity (§§ 7001, 7003, subd. (2)), awarding support payments, medical and

related expenses (§ 7010, subd. (c)), authorization on the part of the public agency to enforce the support and other obligations of the father (§ 7012, subd. (a)) and awarding of costs and attorney's fees to the prevailing party in the discretion of the trial court (§ 7011).

Second, the procedural steps taken by the county convincingly demonstrate that the action was prosecuted pursuant to both the Welfare and Institutions Code (§ 11350 et seq.) and the Civil Code, including the Uniform Act. For example, in successfully resisting appellant's motion for change of venue, the county argued that *Dorame* v. *Superior Court* (1978) 81 Cal.App.3d 70 [146 Cal.Rptr. 162], which was brought for child support and reimbursement of public assistance under section 11350, was distinguishable because *the basis of the present action "is the establishment of paternity pursuant to the Uniform Parentage Act (C.C., § 7000, et seq.).* To this end, the minor child, ROSCHELLE RAGLAND, is made a party plaintiff—the action being styled, THE CITY AND COUNTY OF SAN FRANCISCO on behalf of ROSCHELLE RAGLAND and ROSCHELLE RAGLAND by her Guardian ad Litem. . . ." (Italics added.) The county likewise emphasized that under section 7010 "the order or judgment resulting from proceedings under the Uniform Parentage Act may contain any other provision directed against the appropriate party, including support" and that the issues raised under the AFDC provisions of the Welfare and Institutions Code "are all resolvable within the parameters of the same action brought under C.C. § 7000 et seq." Moreover, in moving for an order for blood tests, the county requested reasonable attorney's fees in reliance on section 7011 of the Uniform Act: "*This motion is made pursuant to* Evidence Code § 892 and *Civil Code § 7011* and is based on this notice, the authorities cited below, the attached financial declaration, the documents heretofore filed, and such oral and documentary evidence as may be presented at the time of hearing. [¶] Evidence Code § 892 provides that when paternity is an issue the court shall upon motion of any party order the mother, children and alleged father to submit to blood tests. Paternity is an issue in this case and blood grouping reports will materially assist in resolving that issue. The City and County of San Francisco, as a party to this action, therefore moves that such blood tests be ordered. [¶] *Civil Code § 7011 permits the court to order payment of reasonable counsel fees* and costs including blood tests." (Italics added.)

We are unpersuaded by case authority to the contrary. *County of Los Angeles* v. *Superior Court (Holley), supra,* 102 Cal.App.3d 926, the principal authority upon which respondents rely,[5] is in part distinguishable from the present case, and in part decided upon questionable reasoning.

---

[5]The additional cases cited by respondents (i.e., *County of Tulare* v. *Ybarra, supra,* 143 Cal.App.3d 580; *Smith* v. *Superior Court, supra,* 118 Cal.App.3d 512; *County of Fresno* v. *Superior Court, supra,* 82 Cal.App.3d 191) are either cases following *Holley* or address different issues. As a consequence, a separate analysis of those cases is not necessary.

The primary distinguishing factor is that in *Holley* the county brought the paternity and support action solely and specifically pursuant to section 11350 et seq. Accordingly, the holding of the court that section 7011 of the Uniform Act did not provide a statutory basis for attorney's fees to counsel of the indigent defendant was unnecessary dictum and in part predicated upon that perceived distinction. As the court stated: "While a considerable similarity of issues exists in the two actions, nevertheless, the cause of action of a county for reimbursement of child support under section 11350 is a different action from that of a parent or child under the UPA to determine parentage and support; and a judgment in the former action is not res adjudicata in the latter action (Welf. & Inst. Code, § 11350.1). In view of the substantial differences between these actions, we think the procedural provisions of the UPA do not apply to the action at bench (Welf. & Inst. Code, § 11350; *D. G.* v. *Superior Court* (1979) 100 Cal.App.3d 535, 542 [ ])." (*County of Los Angeles* v. *Superior Court (Holley), supra,* 102 Cal.App.3d at pp. 929-930.) In contrast, the county in the case at hand proceeded pursuant to the Uniform Act. This the county admitted when it sought attorney's fees and costs specifically pursuant to section 7011 of that very act.

Insofar as *Holley* purports to hold that as a general rule no attorney's fees may be awarded under the Uniform Act if the county brings an action for establishing paternity and recovery of AFDC payments from the noncustodial parent (*County of Los Angeles* v. *Superior Court (Holley), supra,* 102 Cal.App.3d at p. 928), it is less than persuasive. The conclusion reached in *Holly* is predicated on three assumptions: (1) the primary parties in actions brought under the Uniform Act do not include the county but consist only of the child, the child's natural mother and the man presumed to be the child's father (Civ. Code, § 7006, subd. (a)); (2) although the district attorney may institute such an action (Civ. Code, § 7006, subd. (g)), he or she does so only in the interest of the parties and not for reimbursement to the county for welfare payments made to the child or its mother; and (3) the causes of action brought under section 11350 et seq., and the provisions of the Uniform Act are separate and distinct: the action under the Uniform Act primarily seeks a determination of paternity as to which support payments are only ancillary; in contrast, an action based on section 11350 has as its primary purpose recovery of the AFDC payments spent by the county for the support of the child. None of these reasons is well founded.

For, subdivision (g) of section 7006 of the Uniform Act, which specifically authorizes the district attorney to initiate such an action *on behalf of the county,* puts to rest any notion that the parties under the Uniform Act are limited only to the illegitimate child, the natural mother and the putative father.

When the Uniform Act is read together with the pertinent provisions of the Welfare and Institutions Code, it clearly appears that as a condition of receiving AFDC payments, the custodial parent must assign to the county his or her rights of support and must cooperate with the county in establishing the paternity of the child born out of wedlock. (§ 11477.)[6] This statutory scheme mandates that the district attorney "shall" bring paternity and support payment suits where, as in the instant case, the custodial parent is receiving AFDC benefits. (§§ 11475.1, 11476;[7] *Salas* v. *Cortez, supra,* 24 Cal.3d 22, 30.) The duty imposed upon the district attorney to bring such actions is further accentuated by the statutory sanctions specified in section 11475.2 which may be activated if the district attorney fails to comply with the provisions of the statute.

Finally, the *Holley* court's characterization of the separate and distinct nature of the causes of action under the two codes is more theoretical than real. It is obvious that under both codes the issue of paternity must be decided first, because it is a sine qua non to the imposition of liability for support payments. It is likewise evident that the characterization of "primary" and "auxiliary" pertains to the issues of paternity and support

---

[6]Section 11477 reads in part: "As a condition of eligibility for aid paid under this chapter, each applicant or recipient shall: [¶] (a) Assign to the county any rights to support from any other person such applicant may have in their own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and which have accrued at the time such assignment is made. Receipt of public assistance under this chapter shall operate as an assignment by operation of law. An assignment of support rights to the county shall also constitute an assignment to the state. . . . [¶] (b) Cooperate with the county welfare department and district attorney in establishing the paternity of a child born out of wedlock with respect to whom aid is claimed, and in obtaining any support payments due any person for whom aid is requested or obtained. . . ."

[7]Section 11475.1 provides in pertinent portion: "Each county shall maintain a single organizational unit located in the office of *the district attorney which shall have the responsibility for promptly and effectively enforcing child and spousal support obligations and determining paternity in the case of a child born out of wedlock.* The *district attorney shall take appropriate action,* both civil and criminal, to *enforce this obligation when the child is receiving public assistance,* and when requested to do so by the individual on whose behalf the enforcement efforts will be made when the child is not receiving public assistance. . . ." (Italics added.)

Section 11476 also emphasizes in relevant part that "It shall be the duty of the county department to refer all cases where a parent is absent from the home, or where the parents are unmarried and parentage has not been determined by a court of competent jurisdiction, to the district attorney immediately at the time the application for assistance, or certificate of eligibility, is signed by the applicant or recipient. If an applicant is found to be ineligible, the applicant shall be notified in writing that the referral of the case to the district attorney may be terminated at the applicant's request. The county department shall cooperate with the district attorney and shall make available to him or her all pertinent information as provided in Section 11478. [¶] Upon referral from the county department, *the district attorney shall investigate the question of nonsupport or paternity and shall take all steps necessary to obtain child support for the needy child,* enforce spousal support as part of the state plan under Section 11475.2, *and determine paternity in the case of a child born out of wedlock. . .* " (Italics added.)

rather than the particular code under which the action for determining those issues is pursued.

We therefore conclude that in the case at bench the court has discretion to award the appellant his costs and reasonable attorney's fees from the county because the action was brought pursuant to both the Welfare and Institutions Code and the Uniform Act. ██ We emphasize that the actual amount to be awarded is left to the trial court, which has wide discretion to determine reasonable attorney's fees and costs. (*In re Marriage of Cueva* (1978) 86 Cal.App.3d 290, 296 [149 Cal.Rptr. 918]; *Glendora Community Redevelopment Agency* v. *Demeter* (1984) 155 Cal.App.3d 465, 474-475 [202 Cal.Rptr. 389].)

II*

. . . . . . . . . . . . . . . . . .

The case is remanded for determination of an award of reasonable attorney's fees; in every other respect the judgment is affirmed.

Poché, J., and Sabraw, J., concurred.

The petition of respondent City and County of San Francisco for review by the Supreme Court was denied April 23, 1987.

---

*See footnote, *ante,* page 1375.