[No. G043576. Fourth Dist., Div. Three. May 13, 2011.]

KEVIN Q., Plaintiff and Respondent, v.
LAUREN W., Defendant and Appellant.

COUNSEL

Law Offices of Opri & Associates and Debra A. Opri for Defendant and Appellant.

Law Offices of Marjorie G. Fuller, Marjorie G. Fuller; Tovstein & Kraetzer and Marc S. Tovstein for Plaintiff and Respondent.

OPINION

**IKOLA, J.**—The litigation between these parties began some four years ago, in March 2007, when Kevin Q. filed a petition to be declared the father of Lauren W.'s son under the Uniform Parentage Act (UPA) (Fam. Code, § 7600 et seq.).[1] The trial court entered a paternity judgment in Kevin's favor, which we reversed. (*Kevin Q. v. Lauren W.* (2009) 175 Cal.App.4th 1119 [95 Cal.Rptr.3d 477].)

In this appeal, Lauren challenges the court's denial of her motion for a court order requiring Kevin to pay Lauren's outstanding attorney fees.[2] Lauren contends the court's denial of her fee request was erroneous under sections 7605 and 7640, the attorney fee statutes that expressly apply to UPA

---

[1] All statutory references are to the Family Code unless otherwise stated.

[2] The order is appealable. (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 561, 564 [101 Cal.Rptr.2d 86]; *Banning v. Newdow* (2004) 119 Cal.App.4th 438, 444 [14 Cal.Rptr.3d 447] (*Banning*).)

cases. She also argues the court erred by relying, at least in part, on section 2032, an attorney fee statute applicable to marital dissolution cases. We affirm the court's order.

## FACTS

In December 2009, Lauren moved the court to order Kevin to pay her outstanding attorney fees incurred in the two consolidated cases between them. In a supporting declaration, Lauren's counsel, Debra Opri, declared: Prior to an April 9, 2008 court hearing on attorney fees (the 2008 hearing), Lauren had owed Opri & Associates $75,754 for fees and costs incurred for Lauren's defense in the action.[3] At the 2008 hearing, the court ordered Kevin to pay $20,000 of the then $75,754 balance, leaving an unpaid balance at that time of $55,754 (stage one fees). Subsequent to the 2008 hearing, Lauren incurred $178,581 in fees and costs and paid Opri's firm $6,589, leaving an unpaid balance of $171,992 (stage two fees). Lauren sought a court order for Kevin to pay a total of $227,746 in attorney fees, comprised of $171,992 and $55,754. According to Opri, Kevin had forced Lauren to fight for her child and defend herself in Kevin's unmeritorious paternity battle, with Kevin's knowledge that Lauren "would be outspent and without legal representation—had she not had [Opri's] office representing her for these many years." Opri's normal hourly billing rate was $575 and her law clerk's was $225.

In Lauren's own declaration, she declared Opri had been working "basically for free" on her behalf. Lauren had paid Opri & Associates a total of $28,280, which included a payment of $15,600 made by Lauren's father. Lauren owed her father "tens of thousands of dollars." Her father had extended Lauren loans to pay her living expenses, but Lauren was now "severely limited" in her ability to borrow any more significant funds from her father due to his own financial limitations.

Lauren filed an income and expense declaration, showing she had last filed an income tax return in 2005, had not been employed since August 2006, and had no income. She also filed copies of Opri's itemized billing statements.

Kevin responded (1) Lauren's request for fees on appeal was untimely; (2) the April 2008 court order that Kevin pay $20,000 of Lauren's stage one fees had rendered res judicata the issue of those fees;[4] and (3) Lauren's request for $125,700 for stage two fees (not including fees on appeal) was

---

[3] For convenience, we have rounded monetary figures to the nearest dollar.

[4] Kevin makes this same res judicata argument on appeal. In *Banning, supra,* 119 Cal.App.4th at page 445, the court left open the question of whether any prior attorney fee order constituted "a judgment for purposes of res judicata . . . ." We need not address this issue since we affirm the court's order denying Lauren any additional fees.

unreasonable because, inter alia, the parties' fees were disproportionate, with Lauren incurring $311,242 in fees for the entire case, compared to Kevin's $141,384, and Lauren incurring $125,735 in stage two fees compared to Kevin's $79,818. Kevin noted that Lauren's attorney had billed Lauren a total of $4,200 for driving time from Beverly Hills for court appearances in Orange County.

In Kevin's declaration, he declared that his trial and appellate attorneys had billed him a total of approximately $140,000, and that one attorney, as a professional courtesy, had charged him a reduced fee of $400 an hour (discounted from the lawyer's usual rate of $450 an hour).

On Kevin's income and expense declaration, he listed his stocks, bonds, and other readily saleable assets as "UNDETERMINED," and checked boxes for real and personal property but specified no fair market value for them. His expenses included monthly installment payments of $150 on a $50,000 loan made to him by certain relatives for litigation costs.

Lauren filed an amended income and expense declaration, declaring, inter alia, she had no income and that her father had loaned her the money to pay her living expenses.

The parties submitted the matter on the pleadings. The court denied Lauren's motion for attorney fees, after identifying the issue to be decided as: whether "attorney's fees should be paid to [Lauren], based on need and ability to pay, as set forth in . . . sections 2030, 2032, 7605, and 7640."

The court made the following findings based on the parties' income and expense declarations. Kevin's average monthly income was $12,803. Lauren had no income from employment and had not worked since August 2006, although she has a master's degree in psychology and is a certified chemical dependency counselor. Lauren received $8,700 per month from "others." These payments to Lauren were not loans; rather, they were "funds on which [she] relies in order to maintain her lifestyle" and therefore constituted support to her. Kevin's average monthly living expenses were $13,320, while Lauren's were $9,197. Kevin had a monthly deficit of $517, compared to Lauren's shortfall of $497. The parties had incurred substantial attorney fees—Kevin $141,384 (resulting in more than $130,000 in loans), and Lauren $311,241 (with about $28,000 paid).

The court appreciated that Lauren's counsel had expended time and talent on the case without substantial payment in advance. Nonetheless, the court stated it had to apply section 2032, subdivision (b), "and consider the

practicality of the expense of litigation consistent with the parties['] overall financial resources." The court stated: "[N]ot all cases are able to be litigated without consideration of the parties' overall financial picture. Only the wealthiest of our citizens can afford to expend more than $500,000 on their family law disputes. The fact that an attorney voluntarily takes on the lower earner does not mean that the law gives him or her carte [blanche] to litigate the case without limitation regardless of the parties['] ability to pay." The court continued: "[S]ection 2032[, subdivision] (d) provides for a mechanism where a party may apply for the Court's assistance regarding fees where the case involves 'complex or substantial issues.' Section 2032[, subdivision] (d) offers the parties and their counsel, in advance of going forward with litigation, the opportunity to implement a case management plan for the purpose of allocating attorney's fees and costs in an amount and to the extent the circumstances practicably allow. The Court notes that [Lauren] did not avail herself of this opportunity and forged ahead, incurring attorney's fees far in excess of either party's reasonable ability to pay." The court concluded "that neither party ha[d] a substantially greater ability to pay the other's fees" and therefore denied Lauren's motion for attorney fees.

The parties did not request a statement of decision.

## DISCUSSION

Lauren contends the court failed to conduct a proper inquiry under the UPA's attorney fee provisions, i.e., sections 7605 and 7640. She claims the court wrongly took into account her father's financial support and "made no determination that [her] fees incurred were unfair, unreasonable or not necessarily incurred." She further argues the court erred by applying section 2032 to this case.[5]

*The Statutory Framework*

■ We review the Family Code statutes that govern attorney fee awards and are potentially relevant to this case. We start with the UPA, which is the part of the Family Code that provides a "procedural vehicle by which unmarried parents establish their rights vis-à-vis each other and their children" (*Erika K. v. Brett D.* (2008) 161 Cal.App.4th 1259, 1267 [75 Cal.Rptr.3d 152]) and "establishes the framework by which California courts make paternity determinations" (*In re Kiana A.* (2001) 93 Cal.App.4th 1109, 1114 [113 Cal.Rptr.2d 669]). Sections 7605 and 7640 of the UPA govern attorney

---

[5] Lauren also argues the court erred by finding her request for appellate fees to be untimely. Kevin concedes the court may have erred in this respect. We do not address this issue since we affirm the court's order on other grounds.

fee awards in UPA cases. Section 7640 predates section 7605; section 7640 was enacted in 1992, over a decade prior to the Legislature's adoption of section 7605 in 2004.[6]

Section 7640 gives a court the *discretion* to "order reasonable [attorney] fees . . . to be paid by the parties . . . in proportions and at times determined by the court." Contained in chapter 4, article 1 of the UPA on paternal relationships, section 7640 arguably applies only to paternity determinations. "Rather than being the result of deliberate drafting by the California Legislature, section 7640 was simply California's adoption of the corresponding provision in the 1973" national UPA. (*Robert J. v. Catherine D.* (2005) 134 Cal.App.4th 1392, 1401 [37 Cal.Rptr.3d 104] (*Robert J.*).)

Besides section 7640, other potentially pertinent Family Code attorney fee statutes that existed *prior* to the enactment of section 7605 were (1) section 270, which provides that, for any fee award under the Family Code, the court must "first determine that the party [to be charged with payment] has or is reasonably likely to have the ability to pay"; (2) section 2030, which authorizes fee awards in marital dissolution cases; and (3) section 2032, which prescribes additional requirements for fee awards under section 2030. In March 2010, when the court issued its ruling here, sections 270, 2032, and 7640 remained unchanged from their original versions first enacted as part of the then new Family Code, effective January 1, 1994.[7]

Section 2030, on the other hand, was amended by the Legislature in 2004, as part of Assembly Bill No. 2148 (2003–2004 Reg. Sess.), the same legislation that adopted then new section 7605. Previously, section 2030 had given a court the *discretion* to award "reasonably necessary" attorney fees in marital proceedings, so long as the court "(1) determin[ed] an ability to pay and (2) consider[ed] the respective incomes and needs of the parties." (Former § 2030, subd. (a), added by Stats. 1993, ch. 219, § 106.1, p. 1607.) As relevant here, Assembly Bill No. 2148 addressed the Legislature's concerns that (1) existing need-based attorney fee provisions were discretionary

---

[6] Effective January 1, 1994, the Legislature replaced the former Family Law Act (Civ. Code, former § 4000 et seq.) with the Family Code. (11 Witkin, Summary of Cal. Law (10th ed. 2005) Husband and Wife, §§ 1, 2, pp. 22–24.) Section 7640, although adopted in 1992, became effective on January 1, 1994, as part of the enactment of the then new Family Code, and continued Civil Code, former section 7011 without change. (Cal. Law Revision Com. com., 29G West's Ann. Fam. Code (2004 ed.) foll. § 7640, p. 122.)

[7] Section 270 "generalize[d] provisions in" Civil Code, former sections 224.10, subdivision (d), 4370, subdivision (a), and 4700, subdivision (b). (Cal. Law Revision Com. com., 29G West's Ann. Fam. Code, *supra*, foll. § 270, p. 73.) Section 2030 continued Civil Code, former section 4370, subdivision (a) without change. (Cal. Law Revision Com. com., 29G West's Ann. Fam. Code, § 2030, *supra*, foll. p. 69.) Section 2032 continued Civil Code, former section 4370.5 without change. (Cal. Law Revision Com. com., 29G West's Ann. Fam. Code, *supra*, foll. § 2032, p. 133.)

(Assem. Com. on Juduciary, Analysis of Assem. Bill No. 2148 (2003–2004 Reg. Sess.) Apr. 20, 2004, p. 4) and (2) although the UPA provided for attorney fees in paternity cases, it did not "specifically" do so for custody and visitation proceedings (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2148 (2003–2004 Reg. Sess.) June 22, 2004, p. 6).

■ The passage of Assembly Bill No. 2148 resulted, inter alia, in two virtually identical statutes—new section 7605 applicable to UPA cases and amended section 2030 applying to marital dissolution proceedings, both effective January 1, 2005.[8] Both statutes provide in relevant part: "[T]he court *shall* ensure that each party has access to legal representation to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party . . . to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." (§ 7605, subd. (a), italics added; see § 2030, subd. (a)(1).) In determining whether to award attorney fees and costs, and the amount of any such fees and costs, a court must consider "the respective incomes and needs of the parties, and . . . any factors affecting the parties' respective abilities to pay." (§ 7605, subd. (b); see § 2030, subd. (a)(2).) The court must augment or modify an award as may be reasonably necessary for the prosecution or defense of the proceeding, "or any proceeding related thereto, including after any appeal has been concluded." (§§ 7605, subd. (d), 2030, subd. (c).)

Despite their virtually identical language, section 2030 diverged in one major respect from section 7605: Section 2030 is (and always has been) controlled and supplemented by section 2032. Under section 2032, "[t]he court may make an award of attorney's fees and costs under Section 2030 . . . where the making of the award, and the amount of the award, are just and reasonable under the relative circumstances of the respective parties." (§ 2032, subd. (a).) Section 2032 further provides: "In determining what is just and reasonable under the relative circumstances, the court *shall* take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately,

---

[8] The only differences between the statutes were that (1) section 7605 applied to child custody and visitation cases, and section 2030 to dissolution and nullity of marriage and legal separation proceedings; (2) section 7605 has two more subdivisions than section 2030, because subdivisions (e) and (f) of section 7605 (governing temporary fee awards) are substantially similar to section 2031 applicable to marital proceedings; and (3) sections 7605 and 2030 contain slight differences in lettering or numbering of subdivisions, and wording (e.g., "government entity" versus "governmental entity"). Section 7605, subdivision (e) was slightly amended in 2006. (Stats. 2006, ch. 538, § 160.) Section 2030, subdivision (b) was significantly revised, effective January 1, 2011, i.e., after the court's ruling in this case.

taking into consideration, to the extent relevant, the circumstances of the respective parties described in Section 4320. The fact that the party requesting an award of attorney's fees and costs has resources from which the party could pay the party's own attorney's fees and costs is not itself a bar to an order that the other party pay part or all of the fees and costs requested. Financial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances." (§ 2032, subd. (b), italics added.) In addition, at the time of the court's ruling in 2010, subdivision (d) of section 2032 provided that if a court finds "the case involves complex or substantial issues of fact or law related to property rights, visitation, custody, or support," the court has discretion to "direct the implementation of a case management plan for the purpose of allocating attorney's fees [and other fees and costs] equitably between the parties." (Former § 2032, subd. (d), as amended by Stats. 1993, ch. 219, § 106.1, p. 1608.)[9]

Section 4320 (referenced in § 2032, subd. (b)) sets forth the "circumstances" to be considered by a court in ordering spousal support. Those circumstances include "the earning capacity of each party" (taking into account their "marketable skills" and any impairment of earning capacity of the supported spouse due to periods of unemployment necessitated by domestic duties) (§ 4320, subd. (a)(1) & (2)); the obligations and assets of the parties; the supported party's ability to be employed "without unduly interfering with the interests of dependent children" (*id.*, subds. (e), (g)); the "age and health of the parties" (*id.*, subd. (h)); the balance of hardships to the parties (*id.*, subd. (k)); and the "goal that the supported party shall be self-supporting within a reasonable period of time" (*id.*, subd. (*l*)).

▮ Thus, sections 2030, 2032, and (where relevant) 4320 form a statutory package. A fee award under section 2030 must comport with section 2032 and potentially with section 4320 as well. Section 2030 is expressly applicable only to marital proceedings. In contrast, sections 7605 and 7640 appear in the UPA which deals with the parent and child relationship.

*Standard of Review*

Our threshold task is to determine the appropriate standard of review. We have found no published cases interpreting or applying section 7605 and only four cases involving section 7640 or its predecessor statute. Those four cases are *Robert J., supra,* 134 Cal.App.4th 1392, *Banning, supra,* 119 Cal.App.4th 438, *Alicia R. v. Timothy M.* (1994) 29 Cal.App.4th 1232 [34 Cal.Rptr.2d 868] (*Alicia R.*), and *City and County of San Francisco v. Ragland* (1987) 188 Cal.App.3d 1375 [234 Cal.Rptr. 327] (concerning § 7640's predecessor statute).

---

[9] Section 2032, subdivision (d) was substantially amended, effective January 1, 2011.

*Robert J.* and *Banning* applied the de novo standard of review to questions of law concerning the interpretation of section 7640 and the constitutionality of that statute, respectively. (*Robert J., supra,* 134 Cal.App.4th at p. 1398; *Banning, supra,* 119 Cal.App.4th at p. 444.) Aside from questions of law, *Robert J., Alicia R.,* and *Ragland* applied an abuse of discretion standard to the trial court's award of attorney fees under section 7640 or its predecessor statute. (*Robert J.,* at p. 1395; *Alicia R., supra,* 29 Cal.App.4th at p. 1238; *City and County of San Francisco v. Ragland, supra,* 188 Cal.App.3d at p. 1384.) This conclusion is not surprising because section 7640 grants a court the *discretion* to award fees.

Section 7605, subdivision (a), in contrast, requires the court to ensure "each party has access to legal representation . . . by ordering, *if necessary* based on the income and needs assessments, one party . . . to pay to the other party . . . whatever amount is *reasonably necessary* for attorney's fees . . . ." (Italics added.) In sum, the court must first assess whether a fee award is necessary to ensure access to legal representation and then, based on that assessment, award that amount which is reasonably necessary to ensure "each party has access to legal representation." The findings of the court regarding the actual income and needs of the parties are necessarily subject to a substantial evidence standard of review. The determination of the amount which is "reasonably necessary" to ensure each party has access to legal representation is a decision necessarily committed to the sound judgment of the trial court, and is, accordingly, subject to review under an abuse of discretion standard.

Accordingly, we will apply the abuse of discretion standard of review here, except to the extent we must determine (1) the relevance of section 2032 to a UPA case, an issue we review de novo, and (2) whether the court's express and implied factual findings regarding the parties' respective income and needs are supported by substantial evidence. Because the parties did not request a statement of decision from the trial court, we will infer "findings in favor of the judgment" on controverted issues. (*In re Marriage of Dancy* (2000) 82 Cal.App.4th 1142, 1159 [98 Cal.Rptr.2d 775], superseded by statute on another point as stated in *In re Marriage of Fellows* (2006) 39 Cal.4th 179, 185, fn. 6 [46 Cal.Rptr.3d 49, 138 P.3d 200].)

*The Court's Reliance on Section 2032*

We next decide whether the court erred by relying, at least in part, on section 2032. *Robert J.* cast light on this issue with respect to section 7640, concluding that section 7640 should *not* be interpreted with reference to section 2030 because section 7640 is *not* "the result of deliberate drafting by the California Legislature" and is entirely dissimilar to section 2030.

(*Robert J., supra*, 134 Cal.App.4th at p. 1401; see also *id.* at p. 1385, fn. 2.) Of course, the opposite is true as to section 7605, which was deliberately drafted by the Legislature to be identical to section 2030.

Here, the trial court was clearly aware of the applicability of sections 7605 and 7640 to this case, having mentioned them in its articulation of the issue to be decided. Yet, the court looked to the more detailed provisions of section 2032 for guidance.

This reliance was warranted for several reasons. First, as we noted above, there is no published case law on section 7605. Second, Lauren directed the trial court's attention to sections 2030 and 2032.[10] In her memorandum of points and authorities below (and in her opening and reply briefs on appeal), she contended that the "fundamental requirement of fee awards under [sections 7640 and] 7605 is that the making of the award, and its amount, be 'just and reasonable under the *relative circumstances* of the respective parties.' " The source of Lauren's quoted phrase—although she does not acknowledge it—is section 2032, subdivision (a). Furthermore, on appeal, Lauren directs our attention to this court's opinion in a *marital dissolution* case for the proper standard for a fee award. (*In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 406 [97 Cal.Rptr.3d 616] [court must "determine how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances"].)

■  Third, in 2004, the Legislature drafted section 7605 and amended section 2030 to be identical statutes, without changing section 2032 which supplemented and controlled section 2030. These statutes require a *comparative analysis* of the parties' circumstances and/or needs and serve the common purpose (shared by all the Fam. Code statutes that authorize attorney fee awards) of ensuring, "to the extent possible, that the litigating parties are on an equal footing in their ability to present their cases . . . ." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2008) § 5:180, p. 5-75 (rev. # 1, 2010), citation omitted.) Thus, sections 7605 and 2030 focus on the parties' "*respective* incomes and needs" and "*respective* abilities to pay." (§ 7605, subd. (b), italics added; see § 2030, subd. (a)(2).) Section 2032 asks whether the award is "just and reasonable under the *relative circumstances* of the respective parties." (*Id.*, subd. (a), italics added.) Of these three statutes, section 2032 is the only one that instructs the court in detail *how* to make a comparative analysis; it requires the court to "take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant," the circumstances specified in

---

[10] Even if we concluded the court erred by applying section 2032 to this case—which we do not—the question would arise whether Lauren invited the error.

section 4320. (§ 2032, subd. (b).) Although some of the factors listed in section 4320 relate only to marriage cases (for example, the duration of the marriage), most of the enunciated circumstances are equally relevant to UPA cases (for example, each party's marketable skills and earning capacity). (§ 4320, subds. (a), (b) & (f); *Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 253 [91 Cal.Rptr.3d 241] ["not all section 4320 factors will be relevant all the time (hence the 'to the extent relevant' language in section 2032)"].)

We conclude the court did not err by taking into account standards and circumstances pertinent under a section 2032 comparative analysis. By doing so, the court was able to perform a more thorough evaluation of the parties' respective abilities to pay.[11]

*The Court Did Not Abuse Its Discretion by Denying Lauren's Fee Request*

Lauren bears the burden of showing the court abused its discretion by failing to award her any attorney fees. (*In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 114 [113 Cal.Rptr. 58], disapproved on a different point in *In re Marriage of Morrison* (1978) 20 Cal.3d 437, 452–453 [143 Cal.Rptr. 139, 573 P.2d 41] [dissolution attorney fees].) She argues the court erred by treating her father's payments to her as income, asserting her father made loans to her, *not* gifts, and that no evidence suggested his financial support "is an infinite obligation, regular or steady . . . ." Lauren also contends the court did *not* find her attorney fees were unreasonable. Finally, Lauren claims Kevin understated his income and overstated his expenses on his income and expense declaration.

We address this last contention first. In Lauren's view, the court erred by failing to "properly scrutinize" Kevin's income and expense declaration so as to detect his "sham accounting." But she raises this argument on appeal, and never apprised the trial court or Kevin below of the alleged deficiencies in Kevin's declaration. As a result, Kevin had no chance to amend, correct, expand, or explain his declaration nor did the trial court have an opportunity to consider Lauren's allegations. Lauren's argument implies that a court bears a sua sponte duty to uncover any omissions, inconsistencies, or falsehoods in the parties' income and expense declarations, but she cites no authority for this proposition. *Alicia R.* suggests a party waives objections to an opposing party's income and expense declaration by failing to object below. (*Alicia R., supra*, 29 Cal.App.4th at p. 1239 [no abuse of discretion where court awarded fees based on mother's income and expense declaration averring biological

---

[11] As to the court's reference to Lauren's failure to seek a case management plan under subdivision (d) of section 2032, which subdivision is arguably inapplicable to UPA cases, a fair reading of the court's ruling shows this statement was not the primary basis of the decision.

father's "income exceeded $200,000," because father did not counter evidence and "argue otherwise at the hearing"].) We decline to consider Lauren's contention raised on appeal. (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 826 [79 Cal.Rptr.3d 588].)

On the issue of the reasonableness of Opri's fees, section 7605, subdivision (a) authorizes awards only for "reasonably necessary" fees. Lauren contends the court did *not* find the fees charged by her attorney to be unreasonable. But in the absence of a statement of decision, we must infer a finding in favor of the judgment on this controverted issue. This is particularly appropriate in light of (1) the court's statement that the law does not give an attorney carte blanche "to litigate the case without limitation" and (2) the disparity between the fees charged by Kevin's counsel and those charged by Opri. Given that we must infer findings in favor of the judgment, we interpret the court's observation that Lauren's counsel "forged ahead, incurring attorney's fees far in excess of either party's reasonable ability to pay," as referring to the unreasonableness of the *fees* charged, not (as Lauren interprets the statement) to Lauren's choice to defend herself against Kevin's paternity claim. (The court, in denying Lauren's request for fee sanctions, found that neither party acted in bad faith or unreasonably in prosecuting or defending the matter. Contrary to Lauren's view, this latter finding was *not* an affirmation that the fees charged by her attorney were reasonable.)

Finally, Lauren argues the court improperly found that the payments made by Lauren's father constituted support to her and therefore Lauren and Kevin had a roughly equal ability to pay fees. She relies on this court's opinion in *In re Marriage of Schulze* (1997) 60 Cal.App.4th 519 [70 Cal.Rptr.2d 488], where a noncustodial father challenged an order requiring him to pay spousal and child support. (*Id.* at p. 525.) There, the trial court ordered the father to pay *immediately and in full* a sum of $7,500 for his former wife's attorney fees. (*Id.* at p. 530.) It was clear "the trial judge presumed [the father] would be able to obtain the $7,500 from his parents" because they had previously "lent him about $8,000 to pay his own fees." (*Id.* at p. 531.) *Schulze* found that presumption to be erroneous, stating, "Charity, once extended, is still not an entitlement." (*Id.* at p. 532.) But that statement related to a loan made by the parents for a particular purpose, as opposed to regular, recurrent monetary gifts intended as support for living expenses.[12] On this subject of *gifts*, *Schulze* declined to explore "the nature of parental gifts to adult children who themselves have their own support obligations. The really tough case—which may be safely left for another day—would be that of the scion of a wealthy

---

[12] Lauren argues the court abused its discretion by ignoring funds loaned to Kevin by his parents to help him pay his attorney fees, but those loans were not recurrent payments made over a lengthy period of time to cover Kevin's living expenses. Moreover, Kevin declared he was paying back those loans.

family whose parents are *not* his or her employers and who still manages to live quite well even on a low annual gross income as defined by section 4058 [computation of annual gross income for purposes of child support] because of bona fide nontaxable *gifts* from his or her parents . . . ." (*Id.* at p. 530, fn. 10.)

The nature of a parent's recurrent gifts to an adult child was subsequently examined in *In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 733 [89 Cal.Rptr.3d 849]. There, the appellate court stated that "where a party receives recurring gifts of money, the trial court has discretion to consider that money as income for purposes of" child support. (*Id.* at pp. 722–723.) The former husband in *Alter*, who sought reduction of an existing child support order (*id.* at p. 723), had received regular monthly payments from his mother for many years (*id.* at p. 724). He claimed the payments were loans, produced promissory notes as evidence, and averred his mother's loans to him "would not continue." (*Id.* at p. 725.) The appellate court found substantial evidence the payments were gifts, noting, inter alia, that no evidence showed the former husband "ever repaid any of the money." (*Id.* at p. 731.) The Court of Appeal then addressed whether "recurring, monetary gifts" may be characterized as income under the relevant child support statute. (*Id.* at p. 733.) It concluded "that nothing in the law prohibits considering gifts to be income for purposes of child support so long as the gifts bear a reasonable relationship to the traditional meaning of income as a recurrent monetary benefit." (*Id.* at pp. 736–737.) In reaching this conclusion, *Alter* found it "irrelevant that there is no legal obligation on the part of the donor to continue making the gifts or that the flow of cash does not appear on the income tax return." (*Id.* at p. 736.) " 'Few, if any, sources of income are certain to continue unchanged year in and year out. People can lose their jobs, interest rates can fall, business conditions can wipe out profits and dividends.' " (*Ibid.*) In sum, "the question of whether gifts should be considered income for purposes of the child support calculation is one that must be left to the discretion of the trial court." (*Id.* at p. 737.) *Alter* concluded the trial court had not abused its discretion in considering the payments to be income because they were "periodic and regular," resulting in money available to the former husband for the support of his children. (*Ibid.*)

■ Here, substantial evidence supports the court's factual finding that the regular, recurrent monetary infusions made by Lauren's father to her over a lengthy period of time, which relieved her of the need to work outside the home, constituted support (and, impliedly, monetary gifts) to her. The court explained: "While the Court recognizes that [Lauren's] receipts from 'others' are not income as defined in the Family Code, they are however funds on which [Lauren] relies in order to maintain her lifestyle. It is clear to the Court that these funds received are not loans, in that [Lauren] reports debt only in the amount of $26,000, all from institutional lenders. [Lauren] reports that

she has not been gainfully employed since August of 2006. She discloses that she has a bachelor's degree in English, a master's degree in psychology and is a certified chemical dependency counselor. [Lauren] does not report receiving or applying for any benefits for disability income from any state or federal agency or private insurance provider. The weight of the evidence therefore supports the proposition that [Lauren] chooses to remain a 'homemaker and mother' and is able to do so as long as other persons contribut[e] to her support. That support, in this Court's mind, is relevant to the issue of [Lauren's] need and ability to pay fees."[13]

The court did not abuse its discretion by considering those gifts to be support (or income) for purposes of calculating Lauren's ability to pay her attorney fees. The gifts were "periodic and regular" and bore "a reasonable relationship to the traditional meaning of income as a recurrent monetary benefit." (*In re Marriage of Alter, supra,* 171 Cal.App.4th at pp. 736–737.)

## DISPOSITION

The order is affirmed. Kevin shall recover his costs on appeal.

O'Leary, Acting P. J., and Aronson, J., concurred.

---

[13] It is clear the court's discussion of Lauren's homemaker and mother status relates to its examination of Lauren's motivation for accepting recurrent financial aid from her father and his intentions in making such payments, rather than any imputation of income to Lauren in terms of what she could have earned if employed. (See *In re Marriage of Bardzik* (2008) 165 Cal.App.4th 1291 [83 Cal.Rptr.3d 72] for a discussion by this court of imputed income.)