Filed 12/18/25  Gary S. v. Alexis B. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| Gary S.,<br><br>    Appellant,<br><br>    v.<br><br>Alexis B.,<br><br>    Respondent. | D084497<br><br><br><br>(Super. Ct. No. 23FL012530C) |

APPEAL from orders of the Superior Court of San Diego County, Rebecca Church, Judge.  Affirmed.

Gary S., in pro. per.; and Michael E. Cindrich for Appellant.

No appearance by Respondent.

INTRODUCTION

In this parentage action, the trial court ordered Gary S. to pay monthly child support of $1,313 to Alexis B. for their minor child and a contribution of $18,300 for Alexis's attorney fees and costs.  Gary appeals these orders, claiming "they were based on incomplete and incorrect financial data," he

was denied a fair hearing, and "the trial court failed to properly apply California law regarding child support and attorney's fees." We affirm.[1]

BACKGROUND

On April 4, 2024, Alexis filed a request for orders (RFO) that Gary pay (1) guideline child support, retroactive to the date she filed her request for a domestic violence restraining order (DVRO) on October 19, 2023, or the date he filed the parentage action on November 7, 2023, and half of the minor child's childcare costs and uncovered medical bills; and (2) $50,325 in attorney fees and costs pursuant to Family Code sections 7640 and 271.[2] Alexis filed a supporting declaration, an income and expense declaration (IED), and her attorney's declaration itemizing fees and costs.

In her supporting declaration, Alexis averred that Gary had a 3.5 percent timeshare in supervised visitation with the couple's minor child. Alexis had just finished her undergraduate studies, was applying to nursing school, and worked part-time as a server, earning approximately $5,018 each month with tips. Alexis stated she was the minor child's sole provider and pays for childcare, healthcare costs not covered by her insurance, and other child related expenses. She had not received any child support from Gary since the couple separated in January 2023.

As for Gary's income, Alexis averred he had "multiple streams of income," including from an LLC that operates a cannabis company and "partnership interests in other businesses which pay him income." Gary had sent Alexis "screenshots of emails from QuickBooks" showing he received

---

[1] Because Alexis did not file a respondent's brief, we determine the appeal based on the record provided and Gary's opening brief. (Cal. Rules of Court, rule 8.220(a)(2).)

[2] Further undesignated statutory references are to the Family Code.

2

"large sums of money." One showed a payment of $8,000 on January 3, 2023, and another showed a payment of $4,560 on September 30, 2023. Gary sent Alexis "screenshots" showing sales he received from the cannabis company, including sales in September 2023 "ranging from $4,500 to $27,000," with a message that "he had two contracts signed that day and would make '45K over [the] next 6 months.' " Based on Gary's statements, Alexis estimated his monthly income was "at least $15,000."

A hearing on Alexis's RFO was held on June 21, 2024. Both parties were represented by counsel. The trial court recited a list of pleadings and documents that it had "thoroughly" reviewed in preparation for the hearing. The court noted that Gary had just lodged a responsive declaration to Alexis's RFO and an IED. Alexis's counsel explained Gary had only served copies on her at 10:21 p.m. the night before. Alexis's counsel objected to the untimely pleadings but requested the court consider Gary's IED.

The trial court ruled it would consider Gary's IED which it had in its hand, but noted the IED was "incomplete." As a party reporting income from self-employment, Gary was required but failed to provide any tax returns or profit and loss statements for his businesses.[3] Based on the information he did report, and Alexis's evidence of his estimated income, the court found he had $5,000 per month in salary wages and $5,000 in income from self-employment.

For calculation of child support, in addition to its findings regarding Gary's income, the trial court determined Gary had a timeshare of 3.5

---

[3]    We take judicial notice of Judicial Council form FL-150, the income and expense declaration form, which states that a party claiming "[i]ncome from self-employment" must "[a]ttach a profit and loss statement for the last two years or a Schedule C from your last federal tax return" for "each of your businesses." (Boldface omitted.) (Evid. Code, § 452, subds. (d), (h).)

percent, a tax filing status of single with two federal exemptions, a monthly health insurance premium of $100 and no other deductions or expenses. It determined Alexis's tax filing status was head of household with two federal exemptions and she had monthly wages of $5,113, a monthly health insurance premium of $348 and no other deductions or expenses. As reflected in its DissoMaster Report, the court ordered Gary to pay monthly guideline child support of $1,313 to Alexis. The court made the order retroactive to December 1, 2023, the first month after Gary filed his parentage action, and ordered the attorneys to meet and confer as to the amount of arrears to be paid at a monthly rate of $150 beginning August 1, 2024. The court also ordered the mandatory add-ons that each party pay one half of any uncovered medical expenses.

Alexis requested $50,325 in attorney fees and costs pursuant to sections 7640 and 271. Her attorney's declaration itemized fees incurred to date of $19,425 and fees anticipated of $30,900 to litigate both the parentage action and pending DVRO requests by both parties. Alexis averred in her declaration she did not have access to funds and has had to rely on family loans to pay her attorney fees. With examples of specific incidents, Alexis also alleged Gary's litigation tactics had caused her to incur "significantly higher legal fees" and were attempts to "harass and control" her.

Pursuant to section 7640, the trial court awarded Alexis $18,300 in attorney fees. The court found a disparity in income and that Gary could pay for both parties' attorney fees. It based these findings on the parties' IEDs, which included reports of how much each had spent on fees and where they received funds to pay for fees. The court found $18,300 of the attorney fees and costs incurred to date "necessary and reasonable" for Alexis's litigation in the parentage action and ordered Gary to contribute that amount at the

4

monthly rate of $750 beginning August 1, 2024 into Alexis's trust account.[4] The funds were ordered to be used only in the parentage action, with any unused funds to revert to Gary. It denied without prejudice the award of any amount related to the pending evidentiary hearing on the parties' DVRO requests.[5]

## DISCUSSION

## I.

### *Gary Fails To Demonstrate the Trial Court Erroneously Determined His Income to Warrant Reversal of the Child Support and Fees Awards*

Gary appeals the child support and fee awards. We begin with the cardinal rule that a trial court's judgment or order is presumed correct, and it is the appellant's burden to affirmatively show error on appeal. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [" 'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' "]; accord *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 (*Jameson*).) To make this showing, the appellant must present meaningful legal analysis supported by citations to facts in the record and, if possible, authority to support the claim of error. (*Multani v.*

---

[4]    We note the court's minute order states the amount of attorney fees was $18,330. The $30 discrepancy, however, would not affect our analysis.

[5]    Pursuant to section 271, the trial court also awarded Alexis $4,330 in attorney fees as sanctions against Gary for prosecuting a motion to quash, which the court found was "adverse to the interest of reasonable and expedit[ing] litigation" and not "well-founded." Gary makes no reference to this award in his briefing on appeal. Any claim of error as to this award is waived. (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 (*Jones*) ["Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived."].)

5

*Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457; see Cal. Rules of Court,[6] rule 8.204(a)(1)(C) [briefs must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"]; rule 8.204(a)(1)(B) [briefs must state each "point under a separate heading or subheading . . . and support each point by argument and, if possible, by citation of authority"].)

In addition, the appellant's factual summary must be limited to "significant facts . . . in the record" (rule 8.204(a)(2)(C); *CIT Group/Equipment Financing, Inc. v. Super DVD, Inc.* (2004) 115 Cal.App.4th 537, 539, fn. 1 ["it is well established that a reviewing court may not give any consideration to alleged facts that are outside of the record on appeal"]) and must include "*all* the material evidence on the point and *not merely* [his or her] *own evidence*" (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 (*Nwosu*) [cleaned up]). The appellant also must present an "adequate record" for review. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574–575 (*Ballard*).) Rule 8.122(b) sets out the required contents of a clerk's transcript. Among others, it "must" include "[a]ny . . . document filed or lodged in the case in superior court" pertaining to the issues on appeal (rule 8.122(b)(3)(A)); and "[a]ny exhibit admitted in evidence, refused, or lodged" (*id.*, (b)(3)(B)).

Gary filed his opening brief as a self-represented litigant,[7] but he is not excused from following these rules of appellate procedure (*Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 31 [" 'as is the case with attorneys, [self-represented] litigants must follow correct rules of procedure' "]; accord

---

[6]     Further undesignated rule references are to California Rules of Court.

[7]     On the day of oral argument, Gary filed a substitution of attorney to have counsel, Michael E. Cindrich, represent him at oral argument.

*Nwosu*, *supra*, 122 Cal.App.4th at p. 1247 [a self-represented party " 'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys' "]). Yet his statement of facts contains legal argument, includes factual assertions without citation to the record, and is decidedly one-sided. He also relies on asserted facts outside the record to support his arguments.

He contends we must reverse the child support and attorney fees awards because the trial court erred in determining his income by relying on "incomplete and inaccurate financial data." Specifically, he contends the court failed to consider his "actual tax liabilities and mandatory deductions," that his "business had been operating at a loss for three years," his "actual tax records" show "overstatement of his net income," and it failed to consider Alexis's earning capacity to impute income to her. There is nothing in the record before us to support these assertions. Indeed, the record is clear that he failed to present any such evidence to the trial court.

Relatedly, Gary contends his due process rights were denied because the trial court "declined to consider financial documents [he] submitted, which included tax returns demonstrating his true financial situation and DissoMaster calculations reflecting his minimum-wage earnings." His claim is belied by the record. As the court informed the parties and counsel, the IED he submitted to the court was "incomplete" because it did not include his tax returns or profit and loss statements for his businesses. Gary's counsel did not correct the court's statement, although he addressed the court at length on numerous issues. The only document rejected by the court was the late-filed responsive declaration, which counsel explained contained points

7

and authorities. We thus reject any due process claim that Gary was denied an opportunity to be heard or to present relevant evidence.[8]

Most consequential, however, is Gary's failure to provide us with a proper record. (*Ballard, supra*, 41 Cal.3d at pp. 574–575.) The record does not contain either Gary's or Alexis's IED; the eight exhibits attached to Alexis's declaration in support of the RFO, which were also lodged with the trial court, evidencing Gary's admissions regarding his income and conduct that were alleged to warrant the award of fees. Without a proper record, we must presume the evidence supports the court's findings and its resulting orders were proper based on those findings. (*Jameson, supra*, 5 Cal.5th at p. 609; accord *Christie v. Kimball* (2012) 202 Cal.App.4th 1407, 1412 ["To the extent the court relied on documents not before us, our review is hampered. We cannot presume error from an incomplete record."].)

Because Gary makes no other arguments for reversal of the child support order in his opening brief on appeal, we need not go any further and affirm that order.[9] We address Gary's additional arguments challenging the trial court's fees award.

---

[8] There is also nothing in the reporter's transcript that show *Gary* was "prevented from speaking at critical points in the proceedings" while attending the hearing remotely, as he claims. Moreover, he was represented by counsel who did argue extensively on his behalf.

[9] At oral argument, Gary asserted (through counsel) that the trial court erred by relying on his IED, signed under penalty of perjury, because it was technically not "filed" with the court and the IED inaccurately double-reported his monthly income of $5,000 for a total of $10,000. Neither argument was raised in the opening brief on appeal and, consequently, both are deemed waived. (*Jones, supra*, 26 Cal.App.4th at p. 99.)

## II.

*Gary Fails To Demonstrate the Trial Court Abused Its Discretion by Awarding Fees to Alexis*

Gary further contends the trial court's order awarding fees to Alexis was an abuse of discretion because it was made without a finding of financial disparity, sufficient evidence, and imposed an unreasonable burden on him. His argument consists of a mere five sentences, without any citations to facts in the record. Although we could deem the undeveloped argument as waived, we find it also lacks merit and reject it.

In a parentage action, section 7640 provides "[t]he court *may* order reasonable fees of counsel . . . to be paid by the parties . . . in proportions and at times determined by the court." (Italics added.) A court facing a request for attorney fees under section 7640 "may apply the standards set forth in [s]ections 2032 and 7605 in making this determination." (§ 7640; see *Kevin Q. v. Lauren W.* (2011) 195 Cal.App.4th 633, 638–639 (*Kevin Q.*) [§§ 7605 and 7640 govern attorney fee awards in cases under the California Uniform Parentage Act].) Section 7605, subdivision (a), provides that a trial court "shall ensure that each party has access to legal representation to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party . . . to pay to the other party . . . whatever amount is *reasonably necessary* for attorney's fees . . . during the pendency of the proceeding." (Italics added.) Section 7605, subdivision (b), requires the court to "make findings on whether an award of attorney's fees and costs is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties. If the findings demonstrate disparity in access and ability to pay, the court *shall* make an order awarding attorney's fees and costs." (Italics added.)

The trial court expressly made all the required findings. As noted, the court found there was a disparity in income and access to funds for attorney fees between the parties and that Gary could afford to pay for both parties' attorney fees. The court relied on the parties' IED, among other things, to make these findings. And because Gary has not provided us with the parties' IEDs, we presume they support the court's findings and that its resulting orders were proper based on those findings. (*Jameson, supra*, 5 Cal.5th at p. 609.) Alexis's declaration, averring that she has had to rely on family loans to pay her attorney fees, is further evidence supporting the court's findings. The court also found $18,300 attorney fees and costs incurred to date "necessary and reasonable" for Alexis's litigation in the parentage action. It reached this specific amount by reviewing counsel's declaration itemizing the fees and costs, rejecting without prejudice over $32,000 in fees requested for work associated with the pending DVRO requests. "The determination of the amount which is 'reasonably necessary' to ensure each party has access to legal representation is a decision necessarily committed to the sound judgment of the trial court." (*Kevin Q., supra*, 195 Cal.App.4th at p. 642.) We see no abuse of discretion and affirm the fees award.

10

## DISPOSITION

The June 21, 2024 orders are affirmed.


                                                                    DO, J.


WE CONCUR:


O'ROURKE, Acting P. J.


BUCHANAN, J.

11