Filed 5/30/14  Wood v. Fard CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RONALD E. WOOD, | |
| Plaintiff and Respondent, | G048418 |
| v. | (Super. Ct. No. 12P000316) |
| SIMA FARD, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Claudia Silbar, Judge.  Affirmed.

Sima Fard in pro. per. for Defendant and Appellant.

Ronald E. Wood, in pro. per.; George C. Rudolph and Richard M. Shack for Plaintiff and Respondent.

\*          \*          \*

Sima Fard (mother) appeals from a March 12, 2013 order denying her request that Ronald E. Wood (father) pay some or all of her attorney fees and costs (Fam. Code, §§ 7640, 7605, 271; all statutory references are to the Family Code unless noted) incurred during postjudgment proceedings to modify the custody order concerning medical decisions for the couple's then nine-year-old daughter. The parties eventually resolved the underlying custody issues by stipulation. For the reasons expressed below, we affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

In March 2012, Ronald E. Wood (father) filed a petition to establish a parental relationship (§ 7630) and to obtain joint legal and physical custody of the couple's daughter, C.W., born in April 2003. Father also applied for an order permitting him to take C.W. to Virginia from March 23 through March 25, 2012, to celebrate her half-sister M.W.'s 16th birthday.

In a declaration, father briefly recounted the history of the case, and the current visitation arrangement contained in a February 2004 proposed stipulated paternity judgment. The proposal was never reduced to judgment because mother did not file the stipulated judgment. Father stated he had seven-hour visits on Sundays, plus one monthly overnight visit, and two five-day vacations per year. Father believed mother would refuse to allow him to take C.W. to Virginia on the grounds C.W. had not yet adjusted to new anti-seizure medication she had started in January 2012. Father requested attorney fees of $7,500 and costs.

Mother objected to the request because it "seriously undermines the child's safety and welfare." She cited C.W.'s medical condition, including seizures, and did not believe father would provide the "close monitoring" required. Mother supported her position with an e-mail from C.W.'s pediatric neurologist, Dr. Tena Rosser, who stated "it would be best" for C.W. not to travel across the country until she had been seizure-

2

free for several months.  Rosser later acknowledged many patients with epilepsy travel safely.

Mother requested attorney fees and costs incurred in opposing father's application.  She filed an income and expense declaration reflecting an average monthly loss from her law practice of $3,305, assets of about $100,000, expenses of $11,000, and stated she had incurred attorney fees of $5,000.

Following a contested hearing at which Dr. Rosser and both parents testified, the trial court granted father's request to travel to Virginia with C.W.  Father agreed to pay $1,500 of mother's attorney fees.

In April 2012, mother filed a response to father's petition to establish a parental relationship.  She sought joint legal custody with primary physical custody and alternate weekend visits for father.  She requested the court order father to pay all her attorney fees.

Father responded with an application for an expanded custody schedule seeking "a more appropriate time-share balance."  He explained mother had tentatively agreed to extended alternating weekend visits, but later reneged on the agreement.

Mother responded she agreed to try the new weekend visitation plan, but C.W. had an anxiety attack and C.W.'s therapist, Dr. Cat Dang, advised increased time with father should occur gradually.  She nevertheless proposed a visitation schedule similar to the schedule father sought, which included extended alternating weekend visits. Mother's attorney filed a declaration stating mother had incurred attorney fees of over $9,000 and expected total fees and costs of over $12,000 through the custody hearing. Father previously had reimbursed mother $1,500.  The attorney requested an order directing father to pay all of mother's fees based on the parents' earning disparity.

Following a July 16, 2012 hearing, the parties stipulated to a custody and visitation schedule.  The court ordered father to pay $1,750 toward mother's attorney fees, noting mother had a tendency to "waste [ ] everyone's time and money."

3

In early August 2012, father sought an order preventing mother from interfering with father's communication with C.W.'s therapist, Dr. Dang, and the neurologist, Dr. Rosser. Father also sought authorization for Dr. Rosser to conduct an extended EEG test to "try and capture one of [C.W.'s] brain events in real time," which both physicians agreed was necessary. Father also sought to prevent mother from "shifting [C.W.'s] care away from [] Rosser to a Caribbean trained doctor who specialize[d] in autism, Asperger's, child strokes and migraines . . . ."

Mother responded Dr. Rosser no longer desired to care for C.W. so father's application was unnecessary. Mother faulted Dr. Rosser for prescribing a medication that caused C.W.'s depressive episodes. Mother offered to allow any board certified pediatric neurologist other than Dr. Rosser to perform a video EEG and become C.W.'s treating neurologist.

At the August 3 hearing, the parties stipulated father could choose a board certified neurologist with privileges at Children's Hospital of Orange County (CHOC) to conduct an extended EEG. The court also authorized, over mother's objection, a meeting among Drs. Rosser, Dang, and the parents to discuss C.W.'s condition and obtain suggestions. The court gave father legal custody for this purpose and directed mother not to interfere.

In November 2012, the court entered the stipulated paternity judgment. In addition to the custody schedule, it included child support of $3,000 per month and $2,000 in attorney fees to mother.

In January 2013, father moved to modify the child custody order. He sought sole legal custody of C.W. to make all major life decisions for her, including medical and educational choices. He also asked the court to prohibit mother from contacting C.W.'s treating team at CHOC and making negative comments concerning C.W.'s medical condition. Father asserted mother displayed "confrontational,

4

condescending and disrespectful behavior" toward C.W.'s new neurologist, Dr. Mary Zupanc, and CHOC medical personnel.

Mother retained new counsel and filed her own request for sole legal custody to make medical and educational decisions, and to reduce father's custody rights so he received no overnight visits. Mother disagreed with Dr. Zupanc's decision to prescribe certain medication for C.W. and believed she was "not the right doctor to determine [C.W.'s] course of treatment." Mother informed Dr. Zupanc she intended to sue her for malpractice and demanded she stop treating C.W. (Code Civ. Proc., § 364.) Mother also accused father of failing to monitor C.W. and her medication when she was in his care on January 20, 2013.

Mother sought $8,000 in estimated attorney fees (later increased to $10,000) and $3,000 in anticipated costs to retain a medical expert. Mother served a subpoena to obtain father's employment records, and a notice to take his deposition and obtain documents. Father moved to quash, sought a protective order, objected to the deposition, and sought attorney fees for misuse of the discovery process. Mother sought sanctions, asserting father's objections to her discovery requests lacked merit and were frivolous.

At a hearing on February 28, 2013, the parties disagreed whether financial discovery was available under the circumstances. The court tentatively ruled discovery was authorized, but suggested father could stipulate to a minimum monthly income and the ability to pay fees in lieu of submitting to discovery. The court remarked the parties had generated "seven inches of paperwork" over the issue and "we're going to get lost and the parties are going to spend a fortune on discovery when we're really trying to determine what is best for the little girl" and this issue is "trivial compared to the real issues." The court stated mother's discovery request appeared to be overbroad, "you've gotten beyond being reasonable in your requests. I think you've gotten into some personal stuff." The court continued the hearing to March 12.

5

In an income and expense declaration filed March 11, 2013, mother stated her income averaged $4,000 per month. She also stated her financial situation had changed significantly over the past 12 months because she worked on a contingency basis and was forced to cut back on her hours to ensure C.W. was adequately supervised. She listed assets of $102,000. She had paid $4,000 in attorney fees, and she owed $24,756 as of February 28. She also sought costs of $6,220, including a $4,000 appearance fee for Dr. Dang on February 28 and $2,480 for private investigation. Mother estimated father's gross monthly income at $133,456. According to father's income and expense declaration, his average monthly income was $33,456, and he had received a $100,000 bonus in the preceding 12 months.

Mother also filed a supplement to her sanctions request. She sought $15,000 (§§ 271; 7605; Code Civ. Proc., § 2017.020; Cal. Rules of Court, rule 5.14) based on father's "unwarranted objections to relevant discovery requests" and for filing with the court mother's unredacted auto lease document containing mother's social security number and other identifying information (Cal. Rules of Court, rule 1.20(2)(A) & (B)).

On March 12, the parties resolved the underlying issues, except attorney fees and costs. They agreed C.W. would receive treatment at Mattel Children's Hospital at UCLA under Drs. Joyce Wu and Raman Sankar. C.W. would continue with her current pediatrician, dentist, ophthalmologist, as well as therapist Dr. Dang, pending transfer of care as recommended by Mattel's staff. No other health care professional could treat C.W. without the written agreement of the parties or court order. The parents agreed to cooperate concerning medical appointments and exams. They also agreed not to discuss the legal action with C.W. or health care professionals, and not to disparage each other in the presence of C.W. or any health care professional. They agreed not to leave C.W. without adult supervision until Mattel physicians authorized a change. The judgment concerning custody was otherwise left intact.

At the March 12 hearing, the parties stipulated father had the ability to pay mother's fees. The court, however, remarked it was unlikely to order reimbursement for mother, explaining "having these parties before me on multiple occasions . . . . The majority of our litigation has been as a result of some of which I think has been matters that should not have been before the court." Mother's lawyer stated the $30,000 in fees were generated since January 23, 2013, and he claimed the "vast majority of those fees were incurred in the discovery dispute created [by father's counsel.

Counsel explained he had hired a private investigator in February, at a cost of $1,400, to perform surveillance of father at home. The investigator ascertained father "left the child unattended for periods of upwards of 20 minutes" on three occasions, which counsel argued refuted father's claims to the contrary. Counsel also cited the costs of subpoenas, father's deposition and transcripts, and Dr. Dang's appearance fees. Counsel requested sanctions, citing the lack of evidence to support father's request for sole legal custody to make C.W.'s major life decisions. He also mentioned father's disparaging comments about mother in letters to Drs. Zupanc and Rosser. Counsel stated "a significant attorney's fees award is appropriate to be able to prevent [father's] conduct in the future." Finally, he argued father violated privacy rules in filing documents with the court, including mother's auto lease and Zupanc's outpatient note that mentioned mother.

Father's counsel responded father's January 2013 application had been "necessitated by [mother's] conduct" in summarily and unilaterally discharging Drs. Rosser and Zupanc, threatening to sue Zupanc, and interfering with medical staff during C.W.'s EEG. Counsel cited Zupanc's deposition testimony that during a January 18 meeting with the parents, mother "stood up, stormed out, saying 'that is it, we are finished,' or words to that effect." Mother had "burned bridges with two of three . . . facilities" in Los Angeles and Orange Counties with the expertise to treat C.W. Mother then filed a "retaliatory request" against father seeking sole legal custody for medical

7

care and to restrict father's visitation. Mother "didn't just seek normal [financial] discovery" and her request was "way out of bounds . . . because of its scope and intrusiveness." Mother included some requests "going back to 2009" and asked about "things that have absolutely nothing to do with the request for a contributive share of attorney's fees in a case such as this." Counsel argued mother's oppressive and harassing discovery requests warranted sanctions. (Code Civ. Proc., § 2023.010, subd. (c); § 2023.030, subd. (a).)

The court found mother had a history of failing to cooperate with medical personnel and, by threatening to sue Dr. Zupanc, mother made a unilateral decision to discharge the doctor. Father was warranted in seeking a court order to obtain treatment for C.W. because "somebody has got to treat the child." Although mother was entitled to financial information, mother's "discovery went well beyond reasonable . . . ." The court stated it weighted and balanced the need for fees, the ability of the parties to pay, "the degree of litigation, the reason for the litigation, the response to the litigation, the response to discovery," and concluded "both sides [should] pay their own fees." The court noted mother "started the ball rolling and it picked up speed, and I don't think the other side should [have] to pay for that" and it was not "reasonable to require under these specific circumstances one party to pay for attorney's fees for the other party's actions that started all of this mess." The court faulted father for not stipulating he had the ability to pay fees, and stated that was why it was denying father's sanctions request.

II

DISCUSSION

A. *The Trial Court Did Not Abuse Its Discretion by Denying Mother's Request for Attorney Fees and Costs*

Mother argues the trial court abused its discretion by denying her request for "attorneys' fees and costs even though she had presented evidence of the need for fees, did incur fees and presented evidence that her cost and the fees were reasonable."

8

She complains the court did not engage "in any analysis of the factors set forth in the relevant statutes" and case law. She notes her income as primary caretaker was negligible compared to father's and accuses the trial judge of relying on arbitrary and irrelevant factors in denying her fee request. She also complains the court failed to address mother's costs, including the costs of an expert, deposition costs, and cost for a private investigator. Finally, mother asserts we should reassign the case to a different judicial officer on remand.

Sections 7640 and 7605 are the pertinent statues governing an attorney fee award in cases falling under the Uniform Parentage Act. Section 7640 provides, "The court may order reasonable fees of counsel, experts, . . . and other costs of the action . . . , to be paid by the parties, . . . in proportions and at times determined by the court."

Section 7605, subdivision (a) provides: "[I]n any proceeding subsequent to entry of a [judgment under the Uniform Parentage Act, Family Code section 7600 et seq., to establish physical or legal custody of a child or a visitation order], the court shall ensure that each party has access to legal representation to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party, . . . to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." Section 7605, subdivision (b) provides, in relevant part: "When a request for attorney's fees and costs is made under this section, the court shall make findings on whether an award of attorney's fees and costs is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties. If the findings demonstrate disparity in access and ability to pay, the court shall make an order awarding attorney's fees and costs."

In *Kevin Q. v. Lauren W.* (2011) 195 Cal.App.4th 633 (*Kevin Q.*), we explained "section 7640 grants a court the *discretion* to award fees. [¶] Section 7605,

9

subdivision (a), in contrast, requires the court to ensure 'each party has access to legal representation . . . by ordering, *if necessary* based on the income and needs assessments, one party . . . to pay to the other party . . . whatever amount is *reasonably necessary* for attorney's fees. . . . (Italics added.) In sum, the court must first assess whether a fee award is necessary to ensure access to legal representation and then, based on that assessment, award that amount which is reasonably necessary to ensure 'each party has access to legal representation.'" (*Id.* at p. 642.)

 *Kevin Q.* further explained section 7605 "require[s] a *comparative analysis* of the parties' circumstances and/or needs and serve[s] the common purpose (shared by all the Fam. Code statutes that authorize attorney fee awards) of ensuring, 'to the extent possible, that the litigating parties are on an equal footing in their ability to present their cases. . . .' [Citation.] Thus, sections 7605 and 2030 focus on the parties' '*respective* incomes and needs' and '*respective* abilities to pay.' (Citation.)" (*Kevin Q.*, *supra*, 195 Cal.App.4th at p. 643.) *Kevin Q.* noted the trial court may look to section 2032 in determining whether an award is "'just and reasonable under the *relative circumstances* of the respective parties.'" (*Ibid.*) Section 2032 in turn directs the court to the factors listed in section 4320.[1]

---

[1]   Section 2032 provides that in determining what is just and reasonable under the relative circumstances, the court shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties described in section 4320. (§ 2032, subd. (b) [the fact party requesting fees and costs has resources from which to pay is not itself a bar to an order that the other party pay part or all of the fees and costs requested but only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances].)

  Section 4320 directs the court to consider, among other things, the marketable skills of the supported party, the ability of the supporting party to pay taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living, the obligations and assets, including the separate property, of each party, the ability of the supported party to engage in gainful employment without unduly interfering

The trial court's findings regarding the actual income and needs of the parties are subject to a substantial evidence standard of review. (*Kevin Q.*, *supra*, 195 Cal.App.4th at p. 642.) The determination what amount is "*reasonably necessary*" to ensure each party has access to legal representation is a decision committed to the sound judgment of the trial court and is subject to review under an abuse of discretion standard. (*Ibid.*) Where a trial court has discretionary power to decide an issue, an appellate court is not authorized to substitute its judgment for that of the trial judge. The trial court's exercise of discretion will not be disturbed on appeal in the absence of a clear showing of abuse, resulting in injury sufficiently grave as to amount to a manifest miscarriage of justice. The test for abuse of discretion is whether the trial court exceeded the bounds of reason (*In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 682) and the burden is on the party complaining to establish an abuse of discretion. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566; *Alicia R. v. Timothy M.* (1994) 29 Cal.App.4th 1232, 1239 [decision to award fees left to the court's sound discretion based on a totality of relevant circumstances].)

In *Kevin Q.*, we concluded the trial court did not abuse its discretion when it declined to award the mother any of the attorney fees she sought from her former boyfriend in his paternity action. We noted "section 7605, subdivision (a) authorizes awards only for 'reasonably necessary' fees. [The mother] contends the court did *not* find the fees charged by her attorney to be unreasonable. But in the absence of a statement of decision, we must infer a finding in favor of the judgment on this controverted issue. This is particularly appropriate in light of (1) the court's statement that the law does not give an attorney carte blanche 'to litigate the case without

_____

with the interests of dependent children in the custody of the party, the age and health of the parties, the balance of the hardships to each party, and any other factors the court determines are just and equitable.

11

limitation' and (2) the disparity between the fees charged by [the boyfriend's] counsel and those charged by [mother's counsel]. Given that we must infer findings in favor of the judgment, we interpret the court's observation that the [mother's] counsel 'forged ahead, incurring attorney's fees far in excess of either party's reasonable ability to pay,' as referring to the unreasonableness of the *fees* charged, not (as [the mother] interprets the statement) to [the mother's] choice to defend herself against [the boyfriend's] paternity claim. (The court, in denying [the mother's] request for fee sanctions, found that neither party acted in bad faith or unreasonably in prosecuting or defending the matter. Contrary to [the mother's] view, this latter finding was *not* an affirmation that the fees charged by her attorney were reasonable.)" (*Kevin Q.*, *supra*, 195 Cal.App.4th at p. 645.)

Here, as recounted in detail above, the court found there was a history of mother failing to cooperate and interfering with the medical treatment of her daughter. The court also implicitly found mother violated the existing custody order when she threatened to sue Dr. Zupanc, and unilaterally discharged the doctor. The court therefore determined father was warranted in seeking a court order to obtain treatment for C.W. Although mother was entitled to father's financial information, and father "fought that," mother's "discovery went well beyond reasonable . . . ." After considering the relevant factors and circumstances, the court rejected mother's fee request, observing it was not "reasonable to require under these specific circumstances one party to pay for attorney's fees for the other party's actions that started all of this mess."

As in *Kevin Q.*, the trial court here found mother's fees, and impliedly her costs as well, were not reasonably necessary. "[I]n determining whether to award attorney fees to one party, the family court may consider the other party's trial tactics." (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1314, citing *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1167.) We cannot say the court abused its discretion on this point given the court found mother triggered the need for father's application by

12

threatening to sue Dr. Zupanc, which interrupted C.W.'s neurological care. Both parties submitted financial information and nothing suggests the trial court failed to consider and compare pertinent information regarding the parents' respective needs and abilities to pay (their "relative circumstances") in making its determination.

Mother relies on *In re Marriage of Tharp*, *supra*, 188 Cal.App.4th 1295. In *Tharp*, the wife requested attorney fees under section 2030 et seq. The trial court stated "it was not going to review the billing records submitted by" the wife, and then summarily denied her request for attorney fees. (*Id.* at p. 1314.) The court held this "indicate[d] an absolute failure of the family court to perform its official duties and review the relevant evidence before ruling." (*Ibid.*) Nothing of the sort occurred here. The record reflects the court acted reasonably in exercising its discretion.

Based on the differences in income between the parties, the trial court might have ordered father to pay *some* of mother's fees and costs, as it had in the past, to litigate the issues presented in the parties' respective custody modification requests. But we cannot say the trial court, which was well acquainted with the parties and the history of the case, abused its discretion in finding mother's fees were not reasonably necessary to resolve the primary issue of C.W.'s medical care. The court found mother's unreasonable behavior led father to seek a modification of the custody order, and generally found mother's discovery requests unnecessary. In the absence of a statement of decision, we must assume the court found fees and costs associated with mother's other litigation efforts, such as mother's retention of Dr. Dang and the hiring of a private investigator, unnecessary as well. We also must infer the court found mother's income afforded her access to legal representation and she was able to vigorously assert her rights. Nothing suggests the court was "punish[ing]" mother for protecting her "child's life and well-being." Nor should denial of fees and costs in this instance deter mother from initiating or defending future legal action as reasonably necessary to resolve issues concerning C.W.'s welfare.

13

B.     *The Trial Court Did Not Abuse Its Discretion by Denying Mother's Request for Attorney Fees and Costs as Sanctions under Section 271*

Section 271 provides, "(a) Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys.  An award of attorney's fees and costs pursuant to this section is in the nature of a sanction.  In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities.  The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed.  In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award."

The mother contends the trial court erred in not awarding sanctions for fees under section 271 for father's alleged "bad faith conduct . . . as it pertain[ed] to discovery."  Father took the position mother's discovery requests exceeded the limited postjudgment financial discovery available by law under section 3660 et seq. (§ 3660 [generally limits a party to requesting an annual income and expense declaration]; § 3662 [other methods of discovery "may only be used if a motion for modification or termination of the support order is pending"]).  Although the court rejected father's argument financial discovery was unauthorized,[2] it implicitly concluded father's conduct

---

[2]      Father, it turns out, had a sound legal basis for his position.  (See *In re Marriage of Boblitt* (2014) 223 Cal.App.4th 1004 [no automatic right to conduct discovery under the Civil Discovery Act in connection with a postjudgment motion in a marital dissolution proceeding; party must secure the agreement of the other party or must obtain a court order for leave to conduct discovery; § 3660 et seq. allows a party to request a current income and expense declaration even if no motion for modification or

14

had not frustrated the law's policy to promote settlement and to reduce the cost of litigation. Rather, the court found mother's conduct forced father to seek a court order to obtain treatment for C.W. As the court aptly noted, "[Mother] started the ball rolling and it picked up speed, and I don't think the other side should have to pay for that," therefore it was not "reasonable to require under these specific circumstances one party to pay for attorney's fees for the other party's actions that started all of this mess," and mother had "gotten beyond being reasonable in your requests. I think you've gotten into some personal stuff." The court noted it was denying *father* sanctions because he had resisted discovery rather than stipulating to his ability to pay mother's fees. The court did not abuse its discretion by declining to sanction father with an award of fees and costs to mother pursuant to section 271.

C.    *Father's Request for Sanctions for a Frivolous Appeal Is Denied*

Father has filed a motion for sanctions in propria persona (he substituted into the case after mother filed her reply brief) against mother alleging this appeal is frivolous. An appeal is frivolous and warrants the imposition of sanctions when it is prosecuted for an improper motive, such as harassment of the respondent or to delay the effect of an adverse judgment. Sanctions also may be awarded when an appeal indisputably has no merit such that any reasonable attorney would agree that the appeal is totally and completely without merit. (Code Civ. Proc., § 907 ["When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just"]; Cal. Rules of Court, rule 8.276(a)(1) ["On motion of a party or its own motion, a Court of Appeal may impose sanctions, including the award or denial of costs under rule 8.278, on a party or an attorney for: [¶] (1) Taking a frivolous appeal or appealing solely to cause delay"]; *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)

termination of the support order is pending].) Because the court did not rule on father's motions, we do not address the contention.

15

Father asserts the appeal is frivolous because mother, an experienced if frequently unsuccessful appellate practitioner, failed to address essential elements of the trial court's order, failed to identify or discuss factors she contends the court should have considered, her briefs' factual summary and almost 2000-page appellant's appendix includes material not reasonably related to determination of the issues raised, and she disregards court rules requiring record citations for factual assertions. Father states he incurred over $27,000 in attorney fees and $1,600 in costs in responding to mother's appeal.

Reasonable minds could differ whether the trial court abused its discretion in denying mother *any* fees in defending against father's request to change the custody order given the disparity in the couple's financial situation. Mother's briefs sufficiently addressed the issues and contain adequate citations to the record. Mother's factual assertions, at times hyperbolic and disconnected from the record, and large appendix do not contain patently objectionable matter and arguably illuminate the history of the case that factored into the court's determination. We decline to sanction mother for a frivolous appeal.[3]

---

[3]     Father requests we judicially notice (Evid. Code, § 452, subd. (d); § 453) a declaration mother filed in a federal class action on July 12, 2013, seeking a share of $1.8 million in attorney fees. Mother listed an hourly rate in 2011 and 2012 of at least $575, and cited other cases where she had obtained fees, including a $450,000 award in 2010. Father argues the declaration shows mother is financially able to pay sanctions. Mother's application for a large fee award almost a year ago is not a substitute for evidence of her current ability to pay sanctions. In any event, we do not order mother to pay sanctions, and we hereby deny father's request for judicial notice.

### III

#### DISPOSITION

The March 12, 2013 postjudgment order is affirmed.  Each side shall bear its own costs on appeal.


ARONSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.